KAREN P. HEWITT
United States Attorney
SHIREEN M. BECKER
Assistant United States Attorney
California State Bar No. 237930
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5610

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08 MJ 2066-WMC |
|---|---|---|
| Plaintiff, | ) | Date: n/a |
| | ) | Time: n/a |
| v. | ) | |
| | ) | **UNITED STATES' RESPONSE** |
| | ) | **AND OPPOSITION TO DEFENDANT'S** |
| MIGUEL RUMBO-BUSTOS, | ) | **GENERAL OBJECTION TO PRETRIAL** |
| | ) | **RELEASE CONDITION REQUIRING** |
| Defendant | ) | **DEFENDANT TO LEGALLY** |
| | ) | **REMAIN IN THE UNITED STATES** |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Shireen M. Becker, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's "general" objection to the imposition of a pretrial release condition requiring Defendant to prove he can legally remain in the United States.

**I.**

**INTRODUCTION**

Defendant has been charged by Complaint with a violation of 8 U.S.C. § 1326, that is, attempted reentry after deportation. At the initial appearance, this Court imposed several pretrial release conditions, and Defendant objected to the imposition of Condition 7 on the Court's standard pretrial release form (Form. Crim. – 49b). Condition 7 requires Defendant to be able to show that he can legally remain in the United States during the pendency of the criminal proceedings before this Court. The Court imposed Condition 7, and ordered briefing on the issue of whether Condition 7 is

an appropriate condition of pretrial release in Defendant's case.

## II.

## STATEMENT OF FACTS

On July 7, 2008, Miguel Rumbo-Bustos ("Defendant") attempted to enter the United States from Mexico at the Otay Mesa Port of Entry. A Customs and Border Patrol Officer (CBP) heard Defendant yelling and causing a disturbance in the pedestrian facility of the port. The officer approached the Defendant, who orally claimed to be a Lawful Permanent Resident of the United States. The CBP officer requested the permanent resident card from Defendant as proof of admissibility into the United States, but Defendant stated that his wallet had been stolen in Mexico, including his permanent residence card. The officer noticed that Defendant appeared to be nervous, and elected to escort Defendant to the Otay Mesa Port Enforcement Team for further inspection.

During secondary inspection, a records check was performed on Defendant. Immigration Service records indicated that on or about April 12, 2001, an Immigration Judge ordered Defendant deported to Mexico, and Defendant was physically removed from the United States through the Calexico Port of Entry on or about April 13, 2001. Since that time, Defendant has been removed from the United States on at least four additional occasions. Defendant's identity was verified through fingerprint submission, and he was confirmed to be a native and citizen of Mexico.

## III.

## ARGUMENT

**A.    Defense Counsel's Request for a Ruling as to the General Appropriateness of Pretrial Release Condition 7 Seeks an Improper Advisory Opinion**

On July 9, 2008, Defendant Miguel Rumbo-Bustos ("Defendant") was arraigned on a criminal Complaint charging him with a violation of 8 U.S.C. § 1326. At the initial appearance, this Court informed Defendant of the charges against him and imposed several conditions of pretrial release. Defense counsel objected to the imposition of pretrial release Condition 7, which requires Defendant to demonstrate his ability to legally remain in the United States during the pendency of the criminal proceedings against him. This Court imposed Condition 7, and ordered briefing on the issue of whether Condition 7 is an appropriate condition of pretrial release in Defendant's case.

1  Upon request by defense counsel for an extension of time, the Court ordered the brief to be
2  submitted by Defendant on or before July 22, 2008.

3    According to defense counsel, Defendant Rumbo-Bustos has elected **not** to pursue the
4  objection as to Condition 7 so that he may take advantage of the Government's fast-track offer for
5  early disposition of the charge against him.  In spite of his client's decision, however, defense
6  counsel has not withdrawn the objection.  Instead, finding himself without a client, defense counsel
7  now seeks to raise the objection to Condition 7 on behalf of **all** defendants alleged to be
8  non-citizens.  See Attachment A (Def. Br. at 1:17).  Defense counsel asks this Court to rule on the
9  validity of Condition 7 without the benefit of an actual dispute between adverse litigants.  Indeed, in
10 the brief raising the objection to Condition 7, defense counsel left the name and case number
11 portions of the caption blank.  See id. (Def. Br. at 1).

12   The request for a ruling in a case without a named defendant improperly seeks an advisory
13 opinion, and should be denied.  Coalition for a Healthy California v. F.C.C., 87 F.3d 383, 386 (9th
14 Cir. 1996) (holding that advisory opinions by federal courts are prohibited under Article III of the
15 Constitution).  Based on the brief filed by defense counsel, this Court has no information regarding
16 the Defendant's criminal history, the facts of the alleged crime, or – most significantly – the
17 particular characteristics that may impact bail and other conditions of pretrial release.

18   Rather than issue a ruling based on a hypothetical defendant charged with a hypothetical
19 crime, this Court should defer ruling on the appropriateness of Condition 7 until the issue is
20 presented through a specific dispute, rather than an abstract legal question.  Mills v. Rogers, 457
21 U.S. 291, 305 (1982) (declining to consider merely hypothetical issues in light of the prohibition
22 against advisory opinions); Flast v. Cohen, 392 U.S. 83, 96-97 (1968) (noting Article III's
23 prohibition of advisory opinions and recognizing that mere hypotheticals often lack that "clear
24 concreteness provided when a question emerges precisely framed" from a specific dispute).

25   **B.   Defense Counsel Lacks Standing to Raise an Objection on behalf of Individuals not Presently Before this Court**

27   The general rule is that one may not claim standing in a federal court "to vindicate the . . .
28 rights of some third party."  Barrows v. Jackson, 346 U.S. 249, 255-56 (1953).  Instead, the Supreme

1  Court instructs courts not to adjudicate the rights of third parties unnecessarily, finding that the third
2  parties themselves usually will be the best proponents of their own rights. Id.; Singleton v. Wulff,
3  428 U.S. 106, 113-14 (1976).

4      In this case, defense counsel asserts that he is objecting to Condition 7 on behalf of "all"
5  non-citizen defendants. See Attachment A (Def. Br. at 1:17). Yet none of these defendants are
6  presently before the Court, and it is impossible to ascertain if Condition 7 will be imposed in these
7  hypothetical cases. These unnamed, uncharged individuals lack standing to pursue an objection to
8  Condition 7, having suffered no specific injury for which they seek redress. Lujan v. Defenders of
9  Wildlife, 594 U.S. 504, 560 (1992) (articulating elements of standing and recognizing core
10 component of standing is an "essential and unchanging part of the case-or-controversy requirement
11 of Article III"). Because no specific defendant is presently before the Court, the unnamed third-
12 party defendants lack standing to pursue an objection to Condition 7.

13     **C.    Defense Counsel's Brief Regarding Pretrial Release Condition 7 Should be Stricken**
14

15     Pursuant to General Order No. 550 and Local Civil Rule 5.4, this District requires all
16 attorneys to file documents electronically, through its Case Management/Electronic Case Filing
17 (CM/ECF) system.[1/] Defense counsel failed to file his brief in accordance with General Order No.
18 550 and Local Civil Rule 5.4, choosing instead to email the brief directly to chambers. Further,
19 defense counsel did not file the brief in connection with any existing criminal case, or on behalf of
20 any particular party. Because defense counsel's brief was improperly filed in violation of General
21 Order No. 550 and Local Civil Rule 5.4, the brief should be stricken.

22     **IV.**
23     **CONCLUSION**

24     For the reasons stated above, this Court should decline to rule on Defendant's general
25 objection to the application of Condition 7, given the lack of standing and the absence of any actual
26 case or controversy. Further, this Court should strike defense counsel's brief on Condition 7,
27
28     [1/]    Pursuant to Local Criminal Rule 1.1(e)(7), Local Civil Rule 5.4 is applicable to criminal cases filed in this District.

1  because it was filed in violation of General Order No. 550 and Local Civil Rule 5.4, and without
2  connection to any existing case or party. If this Court is inclined to reach the merits of defense
3  counsel's objection – notwithstanding the absence of a particular defendant – the United States will
4  brief the issue of why Condition 7 is a necessary and appropriate condition of pretrial release at the
5  Court's request.
6       DATED: July 29, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Shireen M. Becker*

SHIREEN M. BECKER
Assistant United States Attorney

Attachment A

1  **GREGORY T. MURPHY**
   California State Bar No. 245505
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: gregory_murphy@fd.org

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

                  (HONORABLE WILLIAM McCURINE, JR.)

| UNITED STATES OF AMERICA, | ) | Case No. N/A |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **IN RE: CONDITIONS OF RELEASE** |
| | ) | |
| Defendant. | ) | |

   Defense counsel objects to the proposal that all defendants alleged to be non-citizens "be able to legally remain in the United States" during the pendency of their proceedings as a condition of their release on bond. The Eighth Amendment and the plain language of 18 U.S.C. § 3142 foreclose this condition. Moreover, the condition is vague, and does not fairly apprise the defendant of his obligations upon release.

                                    I.

   **THE RELEASE CONDITION IS FORECLOSED BY THE EIGHTH AMENDMENT AND**

                            **18 U.S.C. § 3142**

   The Bail Reform Act of 1984 implements the Eighth Amendment's prohibition against "excessive bail" by creating a presumption of in favor of liberty for most defendants. See United States v. Salerno, 481 U.S. 739, 755 (1987). The explicit goal of the Act is to provide release conditions for every defendant who is not a flight risk or a danger to the community. To that end, a judicial officer may set only the "least restrictive... condition, or combination of conditions of release needed to "reasonably assure the appearance

of the person as required" and/or prevent the defendant from "endanger[ing] the safety of any other person or the community." 18 U.S.C. §3142(c)-(c)(1)(B). When there is doubt as to the requirements of the bail statute, the Ninth Circuit has held that these overarching principles require those doubts be resolved in the defendant's favor. United States v. Gebro, 948 F.2d 1118 (9th Cir. 1991).

The Bail Reform Act mentions alienage only once: at section 3142(d), a provision that specifically prohibits this Court from detaining a defendant--even temporarily--based solely on his immigration status. See 8 U.S.C. § 3142(d)(permitting temporary detention only if the Court finds both (1) that the defendant is a noncitizen not lawfully admitted as a permanent resident and (2) that the defendant may flee or pose a danger.). Indeed, upon the expiration of any hold, section 3142(d) directs this Court to order the defendant's release "notwithstanding the applicability of other provisions of law governing release pending...deportation...proceedings." This provision explicitly expresses Congress's decision "not to exclude deportable aliens from consideration for release or detention in criminal proceedings." United States v. Adomako,150 F.Supp.2d 1302, 1304 (M.D.Fla. 2001).

Three district courts have concluded that these provisions of the Bail Reform Act require a defendant's release regardless of the danger he will flee or be deported.[1] See United States v. Chavez-Rivas, 536 F.Supp.2d 962 (E.D.Wis. 2008.); United States v. Adomako,150 F.Supp.2d 1302, 1304 (M.D.Fla. 2001); United States v. Hernandez, 747 F.Supp. 846 (D.Puerto Rico 1990). The reasoning in Chavez-Rivas is particularly persuasive. In that section 1326 prosecution, the prosecutor argued that immigration authorities would deport the defendant if he were released without lawful status.[2] Chavez-Rivas, 536 F.Supp.2d at 964. The District Court rejected this argument. While the Court acknowledged that ICE is charged with removing

---

[1] Counsel believes these are the only opinions to address this question.

[2] The government's assertion that defendant released to U.S.C.I.S. will be summarily deported if (s)he cannot establish a lawful right to reside in the United States does not appear to be correct. First, while summary removal procedures exist, the government is under no obligation to employ them. When a person is transferred to immigration custody, DHS has 48 hours to decide whether to issue a notice to appear alleging grounds of removability. 8 C.F.R.§ 287.3(d). Alternatively, DHS may choose to stay issuance of the NTA pending the outcome of criminal proceedings. E.g., United States v. Burgueno, 124 F.3d 213 (9th Cir. 1997) ("Pursuant to its normal procedure, the INS stayed the deportation proceedings pending the conclusion of the criminal case."). DHS may continue to detain the defendant/respondent, or may release the defendant/respondent on bond. Id. Significantly, the government has identified no authority requiring a removal hearing before the completion of the criminal case.

1  aliens, it concluded that "Congress's directive to the executive in 8 U.S.C. § 1231(a) [calling for prompt
2  deportations] does not authorize the district court to disregard its directive to the courts in 18 U.S.C. § 3142(d)
3  [ordering release "notwithstanding the applicability of other provisions of law governing release
4  pending...deportation...proceedings."]." Id. at n.3.  Because the Bail Reform Act plainly expressed both
5  Congress's preference for release and its choice "not to exclude deportable aliens from consideration for
6  release or detention in criminal proceedings," the District Court concluded the Act required the defendant's
7  release, regardless of his immigration status and regardless of the possibility of deportation.  See also
8  Adomako, 150 F.Supp.2d at 1307 (Holding that when immigration officials fail to take custody of an alien
9  held pursuant to 3142(d), an alien who meets other bail requirements must be released.)
10      This analysis is particularly important because a defendant facing federal criminal charges has no
11  forum for establishing the ability to legally remain in the United States.  While a respondent in immigration
12  custody can apply for an immigration bond, the power to permit a defendant facing federal charges "to legally
13  remain in the United States" rests entirely with the executive branch.  Therefore, the condition that a defendant
14  "be able to legally remain in the United States" imposes an impossible condition, and amounts to an end run
15  around the rule--clearly expressed in the Bail Reform Act--that the Court cannot detain a defendant based only
16  on his immigration status.  This Court should decline the invitation to impose it.

## II.

### THE PROPOSED CONDITION IS UNREASONABLE

19      The Bail Reform Act authorizes the Court to order a defendant's release "subject to the least
20  restrictive further condition, or combination of conditions, that such judicial officer determines will
21  reasonably assure the appearance of the person as required and the safety of any other person and the
22  community." 18 U.S.C. § 3142(c)(B).  Whatever the definition of "reasonable," at a minimum it means
23  "possible under the law." A condition that a defendant demonstrate he can legally reside in the United States--
24  a showing only DHS can make--is therefore *per se* unreasonable.
25      Moreover, the condition that the defendant "legally reside in the United States during the pendency
26  of proceedings" is not the "least restrictive" condition necessary to insure a non-citizen defendant's
27  / / /
28  / / /

3

1 appearance.[3] The reasoning in Chavez-Rivas again is illustrative. In that case, having established that the
2 defendant could not be detained based on the possibility that he would be deported, the Court turned to
3 whether any conditions or combination of conditions would secure the appearance of a non-citizen defendant.
4 In this regard, the Court proceeded as it would with any other defendant. The Court detailed the defendant's
5 many ties to the United States, and noted the "defendant may have broken the law in order to return to his
6 family, the same remedy he seeks in his bail request." 536 F.Supp.2d at 969. Under the circumstances, even
7 though a significant prison term and possible future deportation provided "some incentive to flee," the Court
8 could not "conclude that [these factors] outweigh the factors favoring release." The Court therefore affirmed
9 the Magistrate Judge's order that the defendant be released on a $50,000 bond, with $10,000 to be paid in
10 cash, subject to electronic monitoring.

11      This Court should engage in a similar analysis. Although though the Court is not barred from
12 considering an alien's immigration status when deciding on bail conditions, Ninth Circuit precedent is clear
13 that alienage cannot "tip the balance either for or against detention." United States v. Townsend, 897 F.2d 989,
14 994 (9th Cir. 1990); Chavez-Rivas, 536 F.Supp.2d at 968 (Alienage used as one of many factors in
15 determining risk of flight). Defendants with many ties to the community therefore should receive an
16 accessible bond, possibly with appropriate restrictions such as electronic monitoring. Defendants with greater
17 reason to flee should receive larger bonds and more restrictive conditions, such as placement in a halfway
18 house. In all cases, the Court should honor the Bail Reform Act's preference for release. No defendant should
19 receive a bond with the impossible-to-satisfy condition that they persuade the executive branch--in proceeding
20 that may never arrive--to grant them permission to remain lawfully in the United States. See United States
21 v. Chen, 820 F.Supp. 1205, 1208 (N.D.Cal.1992) (Section 3142 "does not seek ironclad guarantees, and the
22 requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to
23 require guarantees against flight.").
24 / / /
25 / / /
26 / / /
27
28      [3]The prosecutor has not argued that non-citizens always threaten the "safety of any other person and the community."

4

## III.

## THE PROPOSED CONDITION IS UNCONSTITUTIONALLY VAGUE

A release condition violates due process "if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." United States v. Hugs, 384 F.3d 762, 768 (9th Cir.2004). A condition that violates due process is invalid. See United States v. Soltero, 506 F.3d 718 (9th Cir. 2007) (Striking as a vague supervised release condition prohibiting defendant from associating with "any known member of any disruptive group."); United States v. Loy, 237 F.3d 251, 265 (9th Cir. 2001) (striking supervised release condition that required defendant to abstain from pornography).

Here, many conversations between counsel both on and off the record have failed to elucidate the contours of the requirement that a defendant "be able to legally remain in the United States during the pendency of proceedings."[4] The problems are many. For example: defendants often are paroled into the United States solely for the purposes of prosecution. Does that parole convey status sufficient to comply with this proposed release condition? Likewise, because there is no requirement that an applicant for immigration relief have any independent right to "legally remain in the United States during the pendency of immigration proceedings,"[5] defendants released into immigration custody may thereafter be paroled into the United pursuant to an immigration bond. Does parole pursuant to an immigration bond satisfy the proposed condition in the absence of other lawful status? More fundamentally, is the ability to legally reside in the United States a pre-condition for release from federal custody, or is it a condition to be satisfied after release, like clearing outstanding warrants? A pretrial detainee cannot request a right to lawfully remain until he is transferred to immigration custody, and thus can never establish the "right to legally remain" as a pre-condition of release. On the other hand, if the ability to lawfully reside in the United States is a condition to be satisfied after

///

---

[4] Indeed, this briefing stems from defense counsel's request for clarification from the Court.

[5] See 8 CFR § 236.1. Some immigration respondents are subject to mandatory detention. For the others, an immigration judge may consider work history, family ties, prior arrests, convictions and appearances at hearings, and the financial ability to post bond in determining risk of flight. E.g. Matter of Patel, I&N Dec. 666 (BIA 1976).

release, any alleged alien for whom DHS does not lodge a detainer would have no forum for complying with the Court's order.

Ultimately, the condition that a defendant "be able to remain lawfully in the United States" fails to explain to a defendant what exactly he must do to comply with the terms of his bond. Just as troublingly, it penalizes the defendant and surety for any failure to comply, but places control over compliance in the hands of DHS, a party affiliated with the prosecution. Such a system does not comport with due process.

## IV.
## CONCLUSION

By proposing this release condition, the prosecutor does not allege that any defendant will do anything wrong. Rather, the government claims the release condition is justified because DHS may interfere with the prosecution's efforts by deporting defendants too soon. Simply put, as the District Court observed in <u>Chavez-Rivas</u>, the possibility that DHS will deport a defendant before criminal proceedings are done is not this Court or the defendant's problem. Deportation and prosecution are the sole provinces, and responsibilities, of the executive branch.

This Court's responsibility is different. Congress has charged this Court with releasing a defendant subject to the least restrictive conditions and without regard to any other provision of law. The government's proposed condition flies in the face of this responsibility and should be rejected.

Respectfully submitted,

DATED:    July 24, 2008            /s/ Gregory T. Murphy
                                   **GREGORY T. MURPHY**
                                   Federal Defenders of San Diego, Inc.